IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 06-CIV-60934-COOKE/BROWN

EDUARDO PADILLA,

   *Plaintiff,*

v.

THE NORTH BROWARD HOSPITAL
DISTRICT*,*

   *Defendant.*
_____/

## ORDER GRANTING SUMMARY JUDGMENT

**BEFORE THE COURT** is the Defendant's Motion for Summary Judgment against the Plaintiff's Complaint alleging state- and federal-law-based employment discrimination. For the reasons below, the Court has concluded that the Defendant's motion be granted in its entirety and, accordingly, the case be summarily dismissed.

## PROCEDURAL HISTORY

On August 26, 2004, the Plaintiff filed a three-count complaint in state court alleging reverse discrimination that violated the Florida Civil Rights Act ("FRCA"): (1) count one under § 760.10 for disparate treatment based on national origin; (2) count two under § 760.10 for race-based disparate treatment; and (3) count three under § 760.10(7) for retaliation.

Two years later, the Plaintiff amended his complaint to add a fourth count for discriminatory discharge under the Federal Civil Rights Act of 1964, Title VII ("Title VII"). The case was subsequently removed to this Court based on federal question jurisdiction.

**FACTUAL BACKGROUND**

Prior to the days of the instant litigation, the Plaintiff, a white male of Hispanic national origin, had been working as a manager for the Defendant's Information Technology ("IT") department for five years. He and several other managers—Dennis Cheek, a white male; Jim Vance, a white male; Jolene Cannon, a white female; Shalom Maimon, a white male of Israeli national origin; and Carlos Gill, a white male of Hispanic national origin—reported directly to the Defendant's Director of Technical Services, Ronaldo Montmann. The situation, however, went awry when the Defendant engaged in an efficiency-inducing reduction-in-force. The Plaintiff, having been laid off, naturally, saw the matter otherwise; he saw the lay-offs as diversity-motivated reverse discrimination. The Defendant's diversity-related activity thus became a point of contention.

Periodically, the Defendant's Human Resources ("HR") department would generate diversity reports for review by upper management. In July, 2002, an upper management official, Joseph Wagner, noticed in one such report that the Plaintiff was classified as "white" rather than Hispanic. Wagner, believing this to be error, e-mailed one of this managers to rectify it. He copied the Plaintiff so as maintaining transparency.

Three months later, in October, 2006, the Plaintiff lodged a complaint with the Defendant's Human Resources department about his classification being changed from white to Hispanic. The Defendant responded by scheduling a meeting for the Plaintiff with the company's Human Resources and Diversity Director.

Prior to that meeting, however, the Defendant went through an efficiency-induced reduction-in-force. As a result, several employees who's work responsibilities could be

reallocated, including the Plaintiff, were laid off. IT Director Montmann stated in his deposition:

> [The Plaintiff] was responsible for database administration and data networking. I had James Vance. He was responsible for telecommunications. I had Dennis Cheek. He was responsible for servers and desktops, and computer roll-outs and break and fixes. I had Carlos Gill. He was the manager of the data center. And I had a consultant, Jolene Cannon. She reported directly to me. She was not a manager ... The decision I made was a business decision. I looked at each business unit, the functions that they performed, and how I could reduce personnel and still provide services to the North Broward Hospital District. So I noticed that Eduardo's group was divided up into really two subgroups that did database administration and the data networking. Well, I had a programmer, a manager, Shalom and he does development work and he is also -- his group is also involved with the database. Database administration. So I saw it overlapped there and as an overlap an opportunity to consolidate. So then I looked at Jim Vance's group. He was responsible for the voice unit working and both voice and data networking technologies have converged back then and still now, so I saw that as an opportunity to move the people who were responsible for the data networking under Jim Vance's management. (Montmann Dep. at 8-10).

The Defendant did not hire anyone to replace the Plaintiff. Rather, two of the Plaintiff's existing co-workers—Shalom Maimon, a white, Israeli male and Jim Vance, a white male—subsumed the Plaintiff job responsibilities. (Montmann Dep. at 12, 19-20, 32). The Defendant also retained Carlos Gill, a Hispanic employee in the Plaintiff's group.

The Plaintiff then filed two charges with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations on May 12, 2003 and August 25, 2003, respectively. The former charge alleged only that the Plaintiff was retaliated against for opposing a change in his national origin, while the latter charge added a claim for discrimination against both white and Hispanic individuals. On August 29, 2003, the EEOC issued a Dismissal and Notice of Suit Rights, which the Plaintiff received on or before September

4, 2007.  Def. Mot. Summ. J., Ex. B; *see* Plaintiff's Resp. to the Court's Order Dated August 2, 2007 [DE 39].

Approximately one year later, on August 26, 2004, the Plaintiff filed a three-count, FCRA-based complaint in Broward County Circuit Court against the Defendant.  The Complaint included two counts of race- and national-origin-based reverse discrimination and one count of retaliation for opposing a change in ethnic classification.  Approximately two years later, the Plaintiff amended his complaint to add a federal claim for discriminatory discharge under Title VII.

**<u>COUNTS I AND II:  RACE- AND NATIONAL-ORIGIN-BASED DISCRIMINATION CLAIMS</u>**

Title VII prohibits an employer "[from discriminating] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Patterned after Title VII, the FRCA, likewise, prohibits such discrimination, and thus can be properly interpreted using Title VII federal case law.  *See Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998); *Florida State Univ. v. Sondel*, 685 So. 2d 923, 925 n.5 (Fla. 1st DCA 1997).

Title VII discrimination may, in limited circumstances, result from reduction-in-force layoffs.  However, because a reduction in force is usually grounded in legitimate business concerns, the Eleventh Circuit has tailored the *prima facie* elements of discrimination to fit this special situation.  "When the plaintiff is terminated through a reduction in force, the *prima facie* case is modified somewhat, such that the plaintiff must show (1) that she is a member of a

protected class, (2) that she was terminated, (3) that she was qualified for another position at the time of termination, and (4) that the employer intended to discriminate in failing to consider the plaintiff for another position." *Coutu v. Martin County Board of County Commissioners*, 47 F.3d 1068 (11 Cir. 1995).

The Court will analyze each element in turn vis-a-vis the Plaintiff's allegations. By virtue of being a human being, the Plaintiff satisfies the first element—he belongs to a race and national origin: white, Hispanic. Moving on, the Plaintiff was terminated during the company's reduction in force. He, therefore, satisfies the second element as well. The third element, however, is where the Plaintiff's trouble begins. And it continues with the fourth.

The third element of the *prima facie* case requires that the Plaintiff be qualified for another open position at the time of termination; the fourth requires discriminatory intent for failing to consider the plaintiff for that open position. The evidence, at present, is that there was no other open or available position for which to consider the Plaintiff. Neither did the Defendant create any third position that combined the duties of the positions eliminated, nor did it conduct an interview or selection process for any of the positions in question. Rather, the Defendant simply engaged in an efficiency-creating reallocation whereby two qualified individuals—already-employed co-workers of the Plaintiff—subsumed the tasks being performed by the Plaintiff. The Plaintiff, therefore, if a victim at all, was a victim of the free market reorganizing itself towards efficiency. Such a situation is unfortunate, but not against the law.

The Plaintiff fails, additionally, to show that the Defendant harbored an intent to discriminate against white or Hispanic individuals. First and foremost, the Defendant certainly cannot be held liable for not considering the Plaintiff for a job that never existed. It is, therefore,

5

logically impossible for the Defendant to have had a discriminatory intent in failing to consider the Plaintiff for another position—there was no other position available. Furthermore, the individuals that the Defendant did retain in its IT department were either white or Hispanic. In fact, the Plaintiff failed to identify even one non-white or non-Hispanic individual that the Defendant's IT department hired to replace him. *See* Mot. Summ. J., Ex. C. And there's simple reason for that—the Plaintiff was never replaced. His duties were merely reallocated.

### COUNT III: RETALIATION CLAIM

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered adverse employment action; and (3) that the adverse employment action was causally related to the protected activity. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1995) (citing *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1074 (11th Cir.1995)). A plaintiff engages in "statutorily protected activity" when protesting an employer's conduct that the plaintiff believes, in good faith, to be unlawful; for the statutory protection to kick in, however, the plaintiff's belief must also be objectively reasonable. *See Harper*, 139 F.3d at 1388 (citing *Little v. United Technologies, Carrier Transicold Division,* 103 F.3d 956, 960 (11th Cir.1997)). Furthermore, when assessing the objective reasonableness of this belief, a plaintiff is charged with having substantive knowledge of the law. *See Harper*, 139 F.3d at 1388 n.2 ("If the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge.").

In the case at hand, the Court finds it puzzling that the Plaintiff would complain about being classified as Hispanic as opposed to white; then base a retaliation claim on that complaint;

all the meanwhile, allege reverse discrimination against individuals classified both as Hispanic *and* white. This makes little sense. If the Plaintiff claims that both Hispanics as well as whites were equally discriminated against—as he does—the change in the Plaintiff's classification from white to Hispanic is meaningless in the context of the discrimination claim. Moreover, there has to be a value placed on accuracy—why should the Defendant, for purposes of its diversity report, not be able to classify one of its Hispanic employees as Hispanic. Furthermore, why should it be "protected activity" for an employee to oppose accurate diversity reporting. The answer—it shouldn't. And it's not. *See* 29 C.F.R. § 1602.7 (authorizing the gathering and reporting of accurate race/ethnic information by way of visual surveys and post-employment records.). The Court, therefore, finds, as a matter of law, that the Plaintiff could not have had a reasonable, good-faith belief that it was "protected activity" for him to oppose diversity reporting that his employer legitimately believed to be accurate and authorized by law. And without that reasonable, good-faith belief, there exists no legally cognizable claim of retaliation. *See id; see also Harper*, 139 F.3d at 1388, n.2.

## COUNT IV: TITLE VII DISCRIMINATORY DISCHARGE CLAIM

Title VII time-bars a claim not brought within ninety (90) days of the plaintiff's receiving the Notice of Suit Rights issued by the U.S. Equal Employment Opportunity Commission (EEOC). *Green v. Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir. 2002) (citing 42 U.S.C. § 2000e-5(f)(1) (1994)); *Santini v. Cleveland Clinic Florida*, 232 F.3d 823, 825 (11th Cir. 2000) ("[The Plaintiff's] federal claims were time-barred because she failed to file her complaint within 90 days of receipt of the Notice [of Right to sue].").

The Plaintiff, here, by his own admission, received his Notice of Suit Rights on or before

September 4, 2003. He filed his state claims approximately one year later, and his Title VII claim approximately three years later; all claims, thus, were filed well over the ninety days statute-of-limitations allowance. Accordingly, the Court need not even reach the merits of the Plaintiff's Title VII claim as it is time-barred by the statute.

## CONCLUSION

The instant case is a prime candidate for summary dismissal. The Plaintiff has not carried his burden to move forward to trial on his four-count Complaint. Counts I, II, and III fail to establish even a *prima facie* case under their respective causes of action. Count IV need not even be addressed on the merits because it is time-barred as being filed years late. Therefore, having addressed the Plaintiff's Claims thoroughly and finding them all meritless in light of the record on file, the Court hereby

**ORDERS and ADJUDGES** that the Defendant's Motion for Summary Judgment is **GRANTED**. Accordingly, the case is **DISMISSED** *with prejudice*, and all pending motions not otherwise ruled upon are **DENIED** *as moot*. The Clerk shall **CLOSE** the case.

**DONE and ORDERED** in Chambers, Miami, FL this 14th day of August.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Stephen T. Brown*
*Counsel of record*